IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 16-50-SLR |
| ) | |
| WILLIAM COOK, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

At Wilmington this 11th day of January 2017, having considered defendant's motions to dismiss the indictment and for a bill of particulars, and the papers submitted in connection therewith;

IT IS ORDERED that said motions (D.I. 14, 15) are denied, for the reasons that follow:

1. **Background.** On June 7, 2016, a federal grand jury returned an indictment with notice of forfeiture charging defendant William Cook with one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of money laundering, in violation of 18 U.S.C. § 1957. (D.I. 2) Defendant entered a plea of not guilty to each count of the indictment. (D.I. 6) On October 17, 2016, defendant filed four pretrial motions. (D.I. 14, 15, 16, 17) A telephone conference was held on November 2, 2016. (D.I. 18) An order entered on November 29, 2016, granting the parties' joint motion for a briefing schedule for the motions to dismiss and for a bill of particulars.[1] (D.I. 21) The matter is

---

[1] Briefing on the motions to produce (D.I. 16, 17) was deferred without prejudice until a trial date is set. (D.I. 21)

fully briefed and ripe for review. (D.I. 22, 24)

2. **Motion to dismiss**. Federal Rule of Criminal Procedure 12(b) permits a defendant to move to dismiss an indictment prior to trial based on a defect in the indictment, including lack of specificity and failure to state an offense. Fed. R. Crim. P. 12(b)(3). *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011). Federal Rule of Criminal Procedure 7(c) requires an indictment to "be a plain, concise, and definite written statement of the essential facts charged." *United States v. Willis*, ___ F.3d ___, 2016 WL 7210094, at *4 (3d Cir. Dec. 13, 2016). "[T]he Federal Rules were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure." *United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012). According to the Third Circuit, an indictment is facially sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *Id.* at 595 (quoting *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007)). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense." *Willis*, 2016 WL 7210094, at *4 (citations omitted). A court should uphold the indictment "unless it is so defective that it does not, by any reasonable construction, charge an offense." *Id.*

3. When reviewing a motion to dismiss, a court may only consider the allegations contained in the charging document, because "the indictment must be

2

tested by its sufficiency to charge an offense," not by whether the "charges have been established by the evidence." *United States v. Sampson,* 371 U.S. 75, 78-79 (1962). In so doing, a court must accept as true the allegations set forth in the indictment. *United States v. Besmajian,* 910 F.2d 1153, 1154 (3d Cir. 1990). A pretrial motion to dismiss an indictment is not a vehicle for addressing the sufficiency of the government's evidence. *Huet*, 665 F.3d 588, 595.

4. **The charges.**[2] The indictment alleges that, in March 2008, "A.B." ("the "Bank") approved a revolving line of credit to AJJ Distributing LLC ("AJJ").[3] (D.I. 2 at ¶ 3) Defendant was the sole owner of AJJ, a Delaware limited liability company with its principal place of business in Sussex County, Delaware. (*Id.* at ¶ 2) The line of credit was secured through AJJ's accounts receivable due from its customers, and defendant signed and submitted borrowing base certificates ("BBCs") that verified the value of those accounts receivable. (*Id.* at ¶ 3) The Bank allowed defendant to withdraw funds pursuant to an agreement that the line of credit balance would not exceed 75% of the

---

[2]Title 18 U.S.C. § 1344 provides:
Whoever knowingly executes, or attempts to execute, a scheme or artifice -
    (1) to defraud a financial institution; or
    (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
shall be fined not more that $1,000,000 or imprisoned not more than 30 years, or both.

[3]"AJJ was a wholesale grocery distribution company that purportedly purchased foods from manufacturers and sold and delivered those foods to regional wholesalers and distributors." (D.I. 22 at fn.1)

3

value of AJJ's accounts receivable, as determined by that week's BBC. (*Id.*)

5. From on or around January 16, 2009 through and including April 16, 2010, defendant repeatedly submitted BBCs containing false accounts receivable to the Bank and contemporaneously requested loan disbursements in excess of the loan's actual value, resulting in unjustified total disbursements of $2.2 million. (*Id.* at ¶¶ 4-7) Subsequently, defendant misappropriated proceeds of the loan disbursements and caused AJJ to default under the loan, resulting in financial harm to the Bank. (*Id.* at ¶ 8)

6. Paragraph 10 of the indictment details one execution of the purported scheme occurring on April 16, 2010. (D.I. 2 at ¶ 10) The indictment charges that defendant,

> having knowingly devised and intending to devise the scheme and artifice to defraud, described in paragraphs 4 though 8 above, and for the purpose of knowingly executing and attempting to execute the aforementioned scheme to defraud the Bank, did transmit and caused to be transmitted, by facsimile, a request for disbursement under the loan, along with a BBC that included materially false and fraudulent representations regarding AJJ's accounts receivable, to wit, the BBC represented that AJJ's total outstanding accounts receivable for that reporting period were $6,665,887.73; whereas, in truth and in fact, as the defendant then and there well knew, AJJ's total accounts receivable were substantially less than represented, in that they were less than $3,600,000 in violation of Title 18, United States Code, Section 1344(1) & 2.

(D.I. 2 at ¶ 10)

7. Count II incorporates by reference the previous paragraphs of the indictment, and charges that on or about April 16, 2010, defendant transferred $14,700 by check from the Bank in Delaware to another business account at Bank of America in

Baltimore, Maryland for the benefit of another business entity[4] that defendant personally controlled, which funds were derived from a specified unlawful activity, to wit, bank fraud. (*Id.* at ¶¶ 11-12)

8. **Discussion.** Defendant moves to dismiss the indictment pursuant to Fed. R. Crim. P. 12(b), arguing that the facts alleged fail to establish that the financial transactions in question constitute bank fraud, and fail to establish that defendant intended and had awareness of wrongdoing in his financial transactions with the Bank to constitute bank fraud. (D.I. 14, 24) Defendant asserts that cursory and form language is used to describe the offense conduct and that the indictment fails to specify any exact dates, entries, methods, documents, or accounts and evidentiary support to show defendant's intent or knowledge. (D.I. 24)

9. Plaintiff disputes the alleged flaws, arguing that the indictment states the essential elements of the charged offenses and satisfies the liberal notice pleading requirements of Fed. R. Crim. P. 7(c). (D.I. 22) Plaintiff submits that the indictment provides background on defendant's relationships with the Bank, whereby defendant had a business line of credit with the Bank that was secured through non-aged business accounts receivable. (D.I. 22 at 5) The indictment further explains defendant's scheme to defraud the Bank or scheme to obtain Bank monies through loan disbursements premised on BBC statements, which contained false accounts receivable. With respect to defendant's intent, plaintiff maintains that at this stage in the proceedings, it is required only to allege (not establish) intent.

---

[4]Identified as Double Eagle Consultants, LLC. (D.I. 2 at ¶ 12)

10. In light of the aforementioned authority, the court finds that the indictment sets forth the essential elements of bank fraud and money laundering, allows defendant to prepare for trial, and permits him to raise double jeopardy defenses in future prosecutions. *Huet*, 665 F.3f at 595; *United States v. Schwartz*, 899 F.2d 243, 247 (3d Cir. 1990). Significantly, the indictment names the charged offenses, tracks the language of 18 U.S.C. § 1344, and sets the time frame for the scheme. The factual recitations sufficiently detail how loan disbursements were made based on the falsified BBCs submitted by defendant. While defendant argues that the indictment fails to specifically allege his intent to commit the offense, the court finds the allegations sufficient at this stage in the proceedings, when the government is required to allege (not establish) intent. *Huet*, 665 at 597-98. Moreover, paragraph 10 sets forth the knowledge and intent language required by section 1344.[5] *See, e.g., United States v. Berscht*, 2008 WL 523435 at *4 (D. Del. 2008).

11. **Bill of particulars**. A bill of particulars is "a formal written statement by the prosecutor providing details of the charges against the defendant. It effectively narrows the government's case at trial in the same way as the formal charging document," to wit, "there can be no variance between the notice given in a bill of particulars and the evidence at trial." *North Jersey Media Group Inc. v. United States*, 836 F.3d 421, 429 (3d Cir. 2016) (quoting *United States v. Smith*, 776 F.2d 1104, 1112 (3d Cir. 1985)). The purpose of a bill of particulars is "to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise

---

[5]The paragraph also incorporates by reference all previous paragraphs of the indictment.

6

during the trial and to protect him against a second prosecution for an inadequately described offense." *United States v. Addonizio*, 451 F.2d 49, 63–64 (3d. Cir. 1971). A court should issue a bill of particulars "only where an indictment fails to perform these functions, and thereby significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Urban*, 404 F.3d 754, 771-72 (3d Cir. 2005).

12. Whether to grant a motion for a bill of particulars is within the discretion of the trial court. *Addonizio*, 451 F.2d at 64. "In determining whether to grant a motion for a bill of particulars, courts must take into account 'numerous countervailing considerations ranging from the personal security of witnesses to the unfairness that can result from forcing the government to commit itself to a specific version of facts before it is in a position to do so.'" *United States v. Shabazz*, 2012 WL 5334480 at *2 (M.D. Pa. 2012). Moreover, "the court may consider not only the indictment, but also all the information that has been made available to the defendant." *Id.* "There is less need for a bill of particulars in cases where the government provides substantial discovery." *Id.*

13. The papers filed in connection with the motion for a bill of particulars reflect the parties' attempts, beginning in July 2016, to obtain and comply with discovery obligations. (D.I. 24 at 2-3; D.I. 22 at 8-10) Plaintiff provided bank records, AJJ business records, tax returns, and a series of charts. In response to defendant's requests for additional information and identification of documents, plaintiff produced a discovery log, provided three agent reports and a witness statement, arranged for open

file discovery and supplied documents requested after the open file review. Moreover, in November, plaintiff sent a reverse proffer to defendant which "included four attachments (23 total pages) that demonstrated one instance of the false BBC scheme. The government offered to provided further explanation of the attachments via meeting or phone to defendant's counsel. Defendant's counsel's only response was to request further proffered examples, which the government declined." (D.I. 22 at 9-10)

14. Defendant explains that, despite the material provided by plaintiff, adequate preparation for trial cannot occur. A bill of particulars is warranted in order to prepare for trial and avoid prejudicial surprise. (D.I. 24) While plaintiff has provided in excess of 30,000 pages of discovery containing millions of individual data entries, only two documents have been identified in response to defendant's repeated requests for specific documentation to support the broad allegations contained in the indictment. Defendant requests the court to order identification of the specific documents intended for use in the government's case in chief. *United States v. Turkish*, 458 F. Supp. 874 (S.D. N.Y. 1978) (government ordered to identify with specificity the documents intended for use in case); *United States v. Upton*, 856 F. Supp. 727 (E.D. N.Y. 1994).

15. In response, plaintiff asserts that it has provided ample discovery and rejects defendant's assertion of inadequate pretrial notice and prejudicial surprise. (D.I. 22) Specifically, prior to defendant's arraignment in July 2016, plaintiff produced ten CD's of discovery, containing bank records, AJJ business records, and tax returns (personal and corporate). (*Id.* at 8) Plaintiff submits that it is not required to "identify every omission or inclusion that rendered false the documents identified in the indictment."

8

*United States v. Moyer,* 674 F.3d 192, 201-02 (3d Cir. 2012).[6]

16. The court concludes that defendant has been given access to core information that will be used to construct the government's case-in-chief. At this juncture, without authority on point and a particularized explanation of the reason and/or prejudice that will ensue, the request for a bill of particulars is denied without prejudice to renew.

17. The court will conduct a teleconference on **Thursday, January 26, 2017** at **3:30 p.m.**, with the court initiating said call.

18. The time between this memorandum order and the teleconference shall be excluded under the Speedy Trial Act in the interest of justice, 18 U.S.C. § 3161, et seq.

United States District Judge

---

[6]Defendant's reliance on authority outside of the Third Circuit is not compelling. The court's attempts to locate case law contradicting plaintiff's arguments, e.g., *United States v. Moyer,* were unsuccessful.