IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No. 16-50-CFC |
| | : | |
| WILLIAM COOK, | : | |
| | : | |
| Defendant. | : | |

---

Whitney C. Cloud, Lesley F. Wolf, Assistant United States Attorneys, Wilmington, Delaware

*Counsel for United States of America*

Thomas E. Carluccio, Plymouth Meeting, Pennsylvania; Frank G. Fina, Plymouth Meeting, Pennsylvania

*Counsel for Defendant*

**MEMORANDUM OPINION**

May 14, 2019
Wilmington, Delaware

                                                  */s/ Colm F. Connolly*
                                          COLM F. CONNOLLY
                                     UNITED STATES DISTRICT JUDGE

In this criminal case, a jury found Defendant William Cook guilty of one count of bank fraud, four counts of making false statements to a bank, and one count of money laundering. At the close of the evidence, Cook moved for judgment of acquittal on all six counts. I denied the motion. At issue before me today is Cook's renewed motion for judgment of acquittal (D.I. 118).

## I. BACKGROUND

### A. The Superseding Indictment

Cook was charged by superseding indictment with one count of bank fraud under 18 U.S.C. § 1344(1), four counts of making false statements to a bank under 18 U.S.C. § 1014, and one count of money laundering under 18 U.S.C. § 1957. D.I. 36. The charges arose out of a line of credit extended by Artisans' Bank to Cook's food broker business, AJJ Distributing, LLC, between 2008 and 2013. The line of credit was secured in part by accounts receivable owed to AJJ. Under the terms of the line of credit, the amount of money Cook could borrow from Artisans' Bank depended on the value of "eligible items," which the line of credit agreement defined as "accounts receivable and inventory aged less than 90 days." *Id.* at ¶ 11. On a weekly basis and when he sought withdrawals from the line of credit, Cook

was contractually obligated to submit to Artisans' Bank borrowing base certificates ("BBCs") that listed AJJ's "eligible items." *Id.* at ¶¶ 13, 14.

The false statement counts in the superseding indictment were based on allegations that Cook provided Artisans' Bank on four occasions with BBCs that listed certain accounts receivable that in fact were no longer owed to Cook. *See id.* at ¶¶ 46, 48, 50, 52 (alleging that Cook "provided [Artisans'] Bank with a BBC listing [million-dollar sums] in accounts receivable, which falsely inflated monies owed to AJJ").

The bank fraud count was similarly based in part on the allegation that Cook submitted to Artisans' Bank "false and fraudulent" BBCs that "included as 'eligible items' accounts receivable that were no longer owed to AJJ." *Id.* at ¶ 33. The bank fraud count alleged specifically that Cook submitted BBCs that "included dozens of accounts receivable" from AJJ's primary customer, White Rose Food, that "were no longer owing to AJJ." *Id.* at ¶ 30. Further, in describing the scheme to defraud on which the bank fraud charge was based, the superseding indictment alleged that "[b]y listing non-'eligible items' on the BBCs," Cook "falsely and fraudulently inflated AJJ's accounts receivable, which: a) induced [Artisans'] Bank to disburse money under the Line of Credit to AJJ; b) influenced [Artisans'] Bank's decisions in connection with extensions and conversions of the

Line of Credit; c) deterred [Artisans'] Bank from requiring larger payments on the Line of Credit; and []d) delayed the Line of Credit's termination." *Id.* ¶ 34.

The money laundering count alleged that Cook transferred by check money that he derived through bank fraud. *Id.* at ¶ 54.

### B. The Trial

At trial, the government called 10 witnesses and introduced over 100 exhibits. The government's evidence demonstrated that Artisans' Bank required Cook to provide BBCs that listed AJJ's eligible accounts receivable on a weekly basis, that the bulk of the accounts receivable listed on the BBCs that Cook submitted involved White Rose, and that the BBCs included accounts receivable from White Rose that had already been satisfied.

Many of the exhibits were AJJ documents introduced through and summarized by the government's case agent, Postal Inspector Samuel Bracken. Bracken explained to the jury how three sets of documents—the weekly BBCs, AJJ's "netting sheets," and checking account statements from two banks showing payments between AJJ and White Rose—established that Cook had submitted BBCs that included accounts receivable from White Rose that had already been satisfied. *See, e.g.*, Tr. at 161:23–163:5 (Jan. 25, 2019); GX 100(a)–(k) (BBCs); GX 200(a)–(k) ("netting sheets"); GX 400(a)–(k) (checking account statements). Bracken also presented at trial summary charts that demonstrated that AJJ listed

3

millions of dollars of accounts receivable incorrectly on 11 separate dates between 2009 and 2013. *See, e.g.*, Tr. at 126:21–127:8 (Jan. 25, 2019); GX 300(a)–(k).

Cook's accountant also testified for the government about how Cook used a different accounting system for White Rose than for the rest of AJJ's accounts. *See* Tr. at 37:9–25 (Jan. 25, 2019). Other documents showed that Cook had correctly reported his eligible accounts receivable on BBCs submitted to another bank on a prior line of credit for one of his businesses. *See* GX 30 (Bay Bank BBCs).

Cook's pending motion focuses on the trial testimony of three witnesses from Artisans' Bank. Each of these witnesses testified about a July 2013 meeting they had with Cook and Cook's prior counsel. The three witnesses testified that Cook's prior counsel stated at that meeting that Cook had submitted "falsified" BBCs and committed "fraud."[1] *See* Tr. at 84:25–88:19 (Jan. 23, 2019) (Brown Testimony); Tr. at 235:23–240:9 (Jan. 24, 2019) (Irwin Testimony); Tr. at 74:7–

---

[1] I admitted this testimony because the statements of Cook's prior counsel in Cook's presence at the July 2013 meeting were adoptive admissions by an authorized agent and therefore not hearsay under Federal Rule of Evidence 801(d)(2)(C) and (D). *See* D.I. 98 at 19–20. In addition to challenging the statements as hearsay, Cook had argued that the statements were made during settlement negotiations and therefore should have been excluded under Federal Rule of Evidence 408. *See id.* at 15. But, as I explained in a pretrial ruling, there was no disputed claim between Cook and Artisans' Bank that could have served as the basis of settlement negotiations under Rule 408, *see id.* at 18–19, and the government did not offer the statements at trial "to prove or disprove the validity or amount of a disputed claim," *see id.* at 16–18 (quoting FED. R. EVID. 408).

75:17 (Jan. 28, 2019) (Akin Testimony). Cook's sole witness at trial was his prior counsel, who denied ever admitting that Cook committed fraud. *See* Tr. at 28:23–30:3 (Jan. 28, 2019).

## II. DISCUSSION

### A. Relevant Legal Standards

#### 1. Rule 29

Rule 29 of the Federal Rules of Criminal Procedure directs the court to enter a judgment of acquittal if "the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). In ruling on a Rule 29 motion, the district court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (internal quotation marks and citation omitted). The court is required to "draw all reasonable inferences in favor of the jury verdict." *United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996). "Thus, a finding of insufficiency should be confined to cases where the prosecution's failure is clear." *Smith*, 294 F.3d at 477 (internal quotation marks and citation omitted). Indeed, the defendant faces a "very heavy burden" in demonstrating that the evidence is insufficient to support the conviction. *United States v. Soto*, 539 F.3d 191, 194 (3d Cir. 2008).

The Third Circuit has cautioned that in reviewing the sufficiency of the evidence, the court "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). The verdict will stand if there is substantial evidence, direct or circumstantial, to support the conviction. *See United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008); *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003). Indeed, "the Government may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone." *Iglesias*, 535 F.3d at 156.

The court "does not view the government's evidence in isolation, but rather, in conjunction as a whole." *Brodie*, 403 F.3d at 134. In other words, the court "must determine whether all the pieces of evidence against the defendant, taken together, make a strong enough case to let a jury find [the defendant] guilty beyond a reasonable doubt." *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987).

### 2. Bank Fraud

Under 18 U.S.C. § 1344(1), it is a crime "knowingly [to] execute[] . . . a scheme or artifice . . . to defraud a financial institution." The parties agreed that bank fraud requires proof of both knowledge and intent to defraud, and the jury was instructed accordingly. *See* Tr. of Jan. 8, 2019 Hr'g at 11:25–12:3 ("MS. CLOUD: Your Honor, I believe this is the Model Third Circuit Jury Instruction for

6

which intent to defraud is an element of 1344, Subsection 1. We have no objection.").

### 3. False Statements

Under 18 U.S.C. § 1014, it is a crime "knowingly [to] make[] any false statement or report . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . upon any application, advance, . . . commitment, [or] loan . . . or any change or extension of any of the same." *See also United States v. Fattah*, 914 F.3d 112, 184 (3d Cir. 2019) ("To obtain a conviction under § 1014, the Government must establish two propositions: it must demonstrate (1) that the defendant made a 'false statement or report,' or 'willfully overvalue[d] any land, property or security' and (2) that he did so 'for the purpose of influencing in any way the action of [a described financial institution] upon any application, advance, . . . commitment, or loan.'" (alterations in *Williams*) (quoting *Williams v. United States*, 458 U.S. 279, 284 (1982))).

### 4. Money Laundering

Under 18 U.S.C. § 1957, it is a crime "knowingly [to] engage[] or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and [that] is derived from a specified unlawful activity." For purposes of defining the offense of money laundering, the term "specified unlawful

activity" includes the offense of bank fraud under 18 U.S.C. § 1344. *See* 18 U.S.C. § 1957(f)(3) ("[T]he term[] 'specified unlawful activity . . . shall have the meaning given [to] th[e] term[] in section 1956 of this title."); § 1956(c)(7)(A) (including under the definition of "specified unlawful activity" "any act or activity constituting an offense listed in section 1961(1)"); § 1961(1) (listing § 1344).

### B. Analysis

Cook's motion targets only the knowledge and intent prongs of the bank fraud and false statement offenses. He advances two basic arguments in support of his motion. First, Cook argues that his conviction was "substantially based" on an "attorney confession" that was "introduced through . . . hearsay testimony" and was "inherently unreliable and untrustworthy." D.I. 119 at 1. Cook contends that this "alleged adopted 'attorney confession' constituted the Government's primary, if not sole, evidence of Defendant's intent and/or knowledge as required by each count of the indictment." *See* D.I. 119 at 5. Second, Cook argues that "[t]o the extent that the government introduced any additional evidence of Defendant's knowledge and intent to defraud (beyond the 'confession'), said evidence constituted little more than speculation, conjecture and opinion." *See id.* at 6–7.

Cook is correct only that the Government was required to prove his knowledge and intent. His arguments otherwise lack merit. With respect to his first argument, it may be the case that the jury "substantially based" its verdict on

8

the three Artisans' Bank witnesses' testimony that Cook's prior counsel volunteered at the July 2013 meeting that Cook "falsified" BBCs and committed "fraud." But the statements of Cook's prior counsel were not hearsay. On the contrary, the statements are defined by Rule 801(d)(2) as "not hearsay" because they were offered against Cook (a party opponent of the government) at trial and (1) were made by a person whom Cook had authorized to speak on his behalf at the July 2013 meeting, *see* FED. R. EVID. 801(d)(2)(C), and (2) were made by an agent of Cook on a matter within the scope of the agency relationship and while the agency relationship existed, *see* FED. R. EVID. 801(d)(2)(D). *See* D.I. 98 at 19–20. Cook notes correctly that his prior counsel "adamantly denied making any confession or admission of fraud or falsified borrowing base certificates" when he testified at trial before the jury. D.I. 119 at 3. But the jury was entitled to reject the testimony of Cook's prior counsel and to weigh his testimony against the testimony of the three Artisans' Bank witnesses, each of whom testified that Cook's prior counsel admitted that Cook defrauded the bank. *See Brodie*, 403 F.3d at 133.

Cook's second argument also lacks merit. The government introduced evidence of Cook's knowledge and intent beyond the testimony of the three Artisans' Bank witnesses. For example, Cook's accountant testified about how Cook used a different accounting system for White Rose than for the rest of AJJ's

accounts. *See* Tr. at 37:9–25 (Jan. 25, 2019). From this evidence, a rational factfinder could infer that Cook intentionally treated White Rose differently than his other customers and that Cook's listing on the BBCs of White Rose's eligible accounts receivable differently than those of his other customers was done intentionally.

Cook also correctly reported his eligible accounts receivable on BBCs submitted to another bank on a prior line of credit for one of his businesses. *Compare* GX 30 (Bay Bank BBCs), *with* GX 100(a)–(k) (Artisans' Bank BBCs). A rational factfinder could infer from this evidence that Cook knew how to list his eligible accounts receivable correctly.

In addition, Artisans' Bank enforced a lending ratio for the line of credit based on the value of eligible accounts receivable early on in its relationship with Cook. *See* GX 34 (email from Artisans' Bank representative to Cook on September 3, 2008 stating that AJJ's eligible accounts receivable did not support the balance of the line and requesting that Cook "please bring the balance of the line down to reflect a 75% loan to value"); GX 59 (loan history document showing $1 million transfer by Cook on September 4, 2008). From this evidence, a rational factfinder could infer that Cook knew that inflating his accounts receivable would allow him to borrow more money.

Viewing this evidence in the light most favorable to the government, a rational factfinder could infer that Cook knew how to list his accounts receivable correctly but nevertheless intentionally misstated them on the BBCs that he submitted to Artisans' Bank so that he could borrow more money.

From all the evidence, it was reasonable for the jury to infer that Cook knowingly and intentionally lied to and defrauded Artisans' Bank within the respective meanings of §§ 1014 and 1344(1).

Finally, because Cook's conviction under § 1344(1) was supported by substantial evidence and Cook makes no separate arguments challenging his money laundering conviction, his Rule 29 challenge to his money laundering conviction similarly falls short.

## III. CONCLUSION

There was more than enough evidence to sustain Cook's conviction. I will therefore deny his renewed motion for judgment of acquittal.